**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

SHAHYAR TALEBINEJAD,         )
         )
         Petitioner,         )         Civil Action No. 3:25-cv-329
         )
         v.         )         Judge Stephanie L. Haines
         )         Magistrate Judge Patricia L. Dodge
LEONARD ODDO, *et al.*,         )
         )
         Respondents.         )

**REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

Before the Court is the counseled Petition for a Writ of Habeas Corpus (ECF 1) filed by Shahryar Talebinejad[1] ("Petitioner") under 28 U.S.C. § 2241 in which he alleges that the length of his post-removal detention is unlawful under *Zadvydas v. Davis*, 533 U.S. 678 (2001) because there is no significant likelihood that his removal will occur in the reasonably foreseeable future. It is respectfully recommended that the Court grant the Petition, order Respondents to release Petitioner from detention under conditions consistent with applicable law, and close this case.

**II.    REPORT**

A.  Relevant Background

Petitioner is a native and citizen of Iran. He entered the United States in 2005 and obtained legal permanent resident status. (ECF 8-1, Resp's Ex. 1, ¶¶ 2-3.) A few years later, in 2008, Petitioner was arrested in Maryland and charged with robbery and other crimes. (*Id.* ¶ 5.) In September 2009, he was found guilty of robbery and sentenced to three years of confinement, with a portion of the sentence suspended. (*Id.* ¶ 7.) Shortly thereafter, Petitioner was placed into the custody of the United States Immigration and Customs Enforcement ("ICE"). (*Id.* ¶¶ 8-9.)

---

[1] Petitioner's first name (Shahryar) is misspelled (Shahyar) on the Court's docket.

1

On January 5, 2010, an Immigration Judge ordered Petitioner removed from the United States to Iran. (ECF 1-2, Pet's Ex. 1.) Petitioner was in ICE custody at the time, but ICE eventually released him on June 1, 2010, on an Order of Supervision ("OSUP") because it was unable to secure a travel document for his removal. (ECF 8-1, Resp's Ex. 1, ¶ 11.)

In around June 2015, Petitioner was once again arrested in Maryland and charged with third-degree burglary, fourth-degree burglary, second-degree assault, and malicious destruction of property valued over $1,000. (*Id.* ¶ 13.) This prompted ICE, on June 30, 2015, to detain Petitioner for violating his OSUP. (*Id.* ¶ 14.)

On July 6, 2015, ICE released Petitioner to another OSUP because it was unable to secure a travel document. (*Id.* ¶ 15; *see also* ECF 1-3, Pet's Ex. 2.) Less than a year later, in May 2016, Petitioner was arrested following an 11-defendant federal Indictment filed in the United States District Court for the District of Maryland. A Superseding Information charged him with conspiracy to distribute and possession with intent to distribute 500 grams or more of cocaine and possessing a firearm as a convicted felon. (*Id.* ¶¶ 16-17; *see also* docket sheet for *United States v. Talebi-Nejad*, 8:16-cr-260 (D. Md.), available on PACER).

Petitioner pleaded guilty to both counts. In October 2017, the district court sentenced him to a total term of imprisonment of 30 months to be followed by four years of supervised release. (*Id.* ¶¶ 16-17; *see also* docket sheet for *United States v. Talebi-Nejad*, 8:16-cr-260 (D. Md.), available on PACER).

About a year later, in October 2018, Petitioner was found guilty in Maryland state court of third-degree burglary. The court in that case sentenced him to a term of ten years of imprisonment, with six years suspended, followed by a term of probation. (*Id.* ¶ 18.)

On November 19, 2019, Petitioner re-entered ICE custody due to violations of his OSUP. (*Id.* ¶ 19.) ICE released him on January 9, 2020, on an OSUP due to an inability to obtain a travel document. (*Id.* ¶ 20.)

Petitioner remained free from detention for more than five years, until June 24, 2025. He has been in ICE custody since that date, when ICE revoked his OSUP and served him with a Notice of Revocation of Release. (ECF 1-4, Pet's Ex. 3.)

On July 28, 2025, ICE forwarded a Travel Document Request to the Consul General at the Interest Section of the Islamic Republic of Iran to facilitate Petitioner's removal. (ECF 8-2, Resp's Ex. 2.) This request stated that Iran is a party to the Convention on International Civil Aviation and is required to provide travel documents to facilitate the return of one of its nationals within 30 days after the request is made. (*Id.*) According to the October 2025 sworn declaration of Zachary Phillips, who is a Deportation Officer for the United States Department of Homeland Security ("DHS"), ICE, Enforcement and Removal Operations ("ERO"), "[o]n September 9, 2025 and October 9, 2025, ICE followed up on that request. To date, Iran has not declined to issue a travel document." (ECF 8-1, Resp's Ex. 1, ¶ 26.)

In October 2025, Petitioner, through counsel, commenced this habeas case by filing the Petition for Writ of Habeas Corpus. (ECF 1.) At the time, ICE was detaining Petitioner at the Moshannon Valley Processing Center ("Moshannon"), which is located within the territorial boundaries of this Court.[2] Petitioner names as Respondents Leonard Oddo, the Warden of Moshannon; Brian McShane, the Acting Direct of ICE's Philadelphia Field Office; Kristi Noem,

---

[2] Although Petitioner was later transferred to another detention facility, this Court retains jurisdiction to decide the Petition because it was filed when Petitioner was detained within the Western District of Pennsylvania. *See, e.g.*, *Khalil v. President, United States*, 164 F.4th 259, 270-71 (3d Cir. 2026) (habeas court with jurisdiction does not lose it because the detainee has been moved out of the district).

the Secretary of the United States Department of Homeland Security; and Pam Bondi, the Attorney General of the United States.

Petitioner contends that he is being detained in violation of 8 U.S.C. § 1231(a)(6), as interpreted by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001), because his removal is not reasonably foreseeable. As relief, he seeks an order from this Court directing that he be immediately released.[3] (ECF 1, ¶¶ 27-29.)

When Petitioner commenced this case, he also filed a motion (ECF 2) in which he asserted that he was entitled to preliminary injunctive relief on his *Zadvydas* claim. The Court ordered expedited service of Petitioner's filings on Respondents, who then filed their Responses opposing the Petition and motion for preliminary injunctive relief. (ECF 8, 9).

On December 3, 2025, the undersigned recommended that the Court deny Petitioner's motion for a preliminary injunction because his post-removal detention had not yet exceeded *Zadvydas'* six-month presumptively reasonable period. (ECF 16.) In an order dated January 5, 2026, the Court adopted that report and recommendation, as supplemented, and denied Petitioner's motion for preliminary injunctive relief. (ECF 19.)

Thereafter, Respondents filed a supplemental response (ECF 21) containing the sworn declaration of Carly A. Schilling, another Deportation Officer assigned to the ERO, to provide an "update [of] all removal efforts since" Phillips' October 2025 affidavit was submitted to the Court. According to Shilling, on January 2, 2026, HQ-RIO—Removal and International Operation Headquarters (the entity responsible for engaging in diplomatic discussions with other countries

---

[3] Petitioner also claimed that ICE violated his "due process rights by denying him an individualized custody review to which he is entitled under ICE policy." As relief on this claim, Petitioner requested that the Court conduct its own review of his custody and then order his release to an OSUP. (ECF 1, ¶¶ 30-32.) The Court subsequently dismissed this claim after Petitioner conceded that in fact he had been provided with the 90-day custody review. (ECF 11 at 2-5; ECF 16 at 6, 12; ECF 22 at 19.)

to secure agreements for the removal of detainees), notified the ERO that there was *no update* on the pending requests submitted to Iran for travel documents to facilitate Petitioner's removal. (ECF 21-1, ¶ 8.) Petitioner then filed a reply explaining that as of December 24, 2025, his detention surpassed *Zadvydas'* presumptively reasonable six-month period. (ECF 22) He asserted that the Petition should be granted and that Respondents be ordered to release him from detention. (*Id.*)

B. Discussion

The purpose of a writ of habeas corpus is to challenge the legal authority under which an individual is being held in custody. *See, e.g.*, *Keitel v. Mazurkiewicz*, 729 F.3d 278, 280 (3d Cir. 2013). The general habeas statute at 28 U.S.C. § 2241 confers jurisdiction on this Court to hear both statutory and constitutional challenges to the lawfulness of Petitioner's detention by ICE. *See, e.g.*, *Zadvydas*, 533 U.S. at 687-88. Section 2241 provides that the writ of habeas corpus shall not extend to a detainee unless "[h]e is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3).

ICE is detaining Petitioner under the post-removal detention provision of the Immigration and Nationality Act ("INA"), which is codified at 8 U.S.C. § 1231(a). This statute provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). The noncitizen *must be detained* during this 90-day timeframe, *id.* § 1231(a)(2), which is "referred to as the 'removal period.'" *Id.*, § 1231(a)(1)(A).

If the noncitizen "does not leave or is not removed within the removal period," then he or she is normally subject to supervised release. *Id.* § 1231(a)(3). But § 1231(a)(6) provides that certain categories of noncitizens who have been ordered removed, including inadmissible and criminal noncitizens or noncitizens whom the Attorney General has determined are a risk to the

community or are unlikely to comply with the order of removal, "*may be detained* beyond the removal period[.]" (Emphasis added.) The parties agree that Petitioner is currently being detained under § 1231(a)(6).

The text of § 1231(a)(6) does not contain an express limit on the duration a noncitizen can be detained under its authority. In 2001, the Supreme Court decided *Zadvydas v. Davis*, 533 U.S. 678 (2001). In it, the Supreme Court outlined the due process concerns that would be implicated by a statute permitting indefinite detention. *Id.* at 690-96. Invoking the canon of constitutional avoidance so that it did not have to decide whether § 1231(a)(6) violated the Fifth Amendment's Due Process Clause, the Supreme Court interpreted the statute to contain an implicit temporal limit. It held that the statute, "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States. It does not permit indefinite detention." *Id.* at 689.

The *Zadvydas* Court held that post-removal detention for six months is "presumptively reasonable." *Id.* at 701. Beyond six months, if removal is no longer reasonably foreseeable, continued detention is no longer authorized under § 1231(a)(6). Thus, at that point, the Supreme Court explained, a noncitizen could bring a claim in a federal habeas petition asserting that ICE no longer has the statutory authority for continued detention. *Id.* at 700-01. In such a proceeding, the Supreme Court instructed, the noncitizen must show there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Id.* at 701. If the noncitizen does so, the burden would then shift to the government to produce "evidence sufficient to rebut that showing." *Id.*

Petitioner claims that he is entitled to habeas relief under *Zadvydas*. As explained above, ICE detained him on June 24, 2025. As of today's date, he has been in continuous ICE custody for more than 7 months.

In support of his request for habeas relief, Petitioner points to the absence of evidence of *any progress* made on the travel request ICE first forwarded to Iranian officials on July 28, 2025. Although ICE has submitted follow-up inquiries regarding the request on at least three separate occasions, there is no evidence that the Iranian government has responded to any request submitted to it regarding him.

In support of their position that the Court should deny the Petition, Respondents rely on data showing that from 2019 through 2024, DHS removed 105 individuals to Iran. (ECF 21-1, ¶ 10.) This evidence is of little persuasive value under the circumstances of this case, where there is no evidence that Iran has responded to the requests for travel documents for Petitioner that ICE has submitted to it since July 28, 2025. Petitioner is also correct that Respondents' data is of limited probative value without a frame of comparison, *e.g.*, what proportion 105 is of the total number of Iranians who had final order of removals.

Moreover, the Court cannot ignore the current political condition of Iran, which supports Petitioner's contention that his removal to there at the present time is "a near impossibility." (ECF 22 at 5-6.) Petitioner explains, without contradiction from Respondents, that:

> Since [his] detention, conditions in Iran have drastically deteriorated; it is in fact even *less* likely now that Petitioner will be removed to Iran than it was just several weeks ago. [Petitioner submits] Exhibit 1 [at ECF 22-1], a travel warning from the U.S. Department of State and Exhibit 2 [at ECF 22-2], a Reuters article about the violence in Iran and the deterioration in U.S.-Iran relations as a result. Since December 2025, mass civil unrest and protests have led to the killing of over of over 2,000 people in Iran. *See* Exh. 2. On January 14, 2026, the Department of State issued a Security Alert urging all Americans to immediately leave Iran due to escalating violence in Iran. *See* Exh. 1. Political and diplomatic relationships have further crumbled between Iran and the United States, with President Trump recently

cancelling all meetings with Iranian officials and military action against Iran being considered. *See* Exh. 1.

(*Id.*)

Finally, Respondents explain that if Iran declines to issue a travel document, DHS will employ third country removal protocols in accordance with the March 30, 2025, memorandum issued by Secretary Noem. (ECF 21-1 ¶ 11.) Respondents have produced no evidence that they have taken any steps to pursue third country removal in Petitioner's case, however.

Based on the above, Petitioner has satisfied his burden of showing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Zadvydas*, 533 U.S. at 701. Accordingly, the burden has shifted to the government to produce "evidence sufficient to rebut that showing." *Id.* They have not satisfied their burden and, therefore, Petitioner's detention under § 1231(a)(6) is no longer lawful and the writ should be granted.

## III.   CONCLUSION

Based on the above, it is respectfully recommended that the Court grant the Petition and order Respondents to release Petitioner from detention forthwith under conditions consistent with the applicable law.

Under the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties are allowed 14 days from the date of this Report and Recommendation to file objections. Failure to do so will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

Dated:  February 18, 2026             /s/ Patricia L. Dodge
                                      PATRICIA L. DODGE
                                      UNITED STATES MAGISTRATE JUDGE

8